van Gestel,
J. This matter is before the Court on the motion by the plaintiff, Kiewit-Atkinson-Kenny (“KAK”), a joint venture, seeking summary judgment pursuant to Mass.R.Civ.P. Rule 56, against the defendant, Massachusetts Water Resources Authority (“MWRA”), as to all claims and counterclaims in this action. The underlying case is grounded on G.L.c. 66, Sec. 10, the Public Records Law (the “PRL”). The MWRA is withholding certain requested documents pursuant to G.L.c. 4, Sec. 7, cl. 26(d), the deliberative policy exemption (hereafter “exemption (d)”).

BACKGROUND

The parties are involved in litigation (the “main action”) over in excess of $58 million for extra work performed under KAK’s contract for construction of the 9.5-mile Deer Island Effluent Outfall Tunnel (the “Outfall Tunnel” or the “Project”), which is a part of the massive Boston Harbor clean-up project. The main action is also pending before this Court, captioned as Kiewit-Atkinson-Kenny, a joint venture v. Massachusetts Water Resources Authority, Suffolk Civil Action No. 01-1920BLS.
This Public Records Law action is basically an attempt by KAK to gain some additional discovery from the MWRA in connection with the main action. In the main action documentary discovery is ongoing, and much has already been produced by the MWRA. A number of documents, however, have been withheld on attorney-client privilege and work product doctrine grounds. Using the PRL, KAK seeks to obtain the withheld documents.
The MWRA contends that this is an unprecedented use of the PRL to gain an unfair advantage for KAK and to place its public adversary at a unique disadvantage by denying the MWRA effective, confidential advice and assistance of counsel in the defense of the main action. The MWRA asks that KAK’s motion be denied and, pursuant to Mass.R.Civ.P. Rule 56(c), to have the Court enter summary judgment in its favor. Perhaps tellingly, the MWRA reports to the Court that it “has offered to make withheld documents available to KAK upon the conclusion of the [main] action or the underlying [main action] claim, but not before that time.” MWRA opposition and memorandum, at p. 2.
The facts upon which this decision is based are undisputed.
On June 6, 2001, and August 13, 2001, KAK sent public records requests to the MWRA pursuant to G.L.c. 66, Sec. 10. The requests sought, among other things, documents relating to the claimed excess water encountered by KAK during the construction of the Outfall Tunnel, the MWRA’s decision to deny KAK’s Excess Water Claim, and the MWRA’s decision to reject the recommendation of a contractually established Disputes Review Board (“DRB”).
The MWRA declined to produce on grounds that many of the documents were exempt in that they were internal or inter-agency memoranda or communications relating to policy positions being developed by it. This is what is known as — and in this memorandum will be referred to as — "exemption (d)" to the PRL. The MWRA’s response also pointed out that many of the allegedly exempt documents, although not wholly withheld on that ground, were within the attorney-client privilege.
This suit followed shortly after the MWRA’s response.
In the process of this litigation, this Court issued two orders: on December 10, 2001, and December 21, 2001. In the first order, the Court denied without prejudice, on procedural grounds, KAK’s motion to compel production of the documents at issue. In the second order the Court granted the MWRA’s motion for a protective order on a Rule 30(b)(6) deposition, provided that the MWRA prepare a log describing all of the documents located in the MWRA offices and the office of its Boston counsel requested by KAK in its June 6, 2001, request and its August 13, 2001, request, in a manner consistent with the discussion between counsel before the Court and the representations made by the MWRA’s counsel to the Court. Such a log was directed to be served on counsel for KAK and filed simultaneously with the Court no later than January 25, 2002.
On January 25,2002, counsel for the MWRA served counsel for KAK with a letter and an attached log of the documents being withheld. Included therein was a list of the “policy” positions that form the basis for the MWRA’s claims that the documents are protected from disclosure under exemption (d). They follow:
A. Resolving KAK’s Differing Site Conditions Excess Water Claim and, thereby, bringing the Boston Harbor Project to completion on a basis that is acceptable to ratepayers, contractually consistent and in compliance with the court order in the Boston Harbor Case — 1999.
*102 B. Bringing the Outfall Tunnel, and thereby the Boston Harbor Project, to completion on a basis that is acceptable to ratepayers, contractually consistent and in compliance with the court order in the Boston Harbor Case — 1993.
C. Bringing the Boston Harbor Project to completion on a basis that is acceptable to ratepayers, contractually consistent and in compliance with the court order in the Boston Harbor Case by seeking settlements of construction claims and avoiding potential exposure to delays, damages and interest in litigation — 1989.
D. Consideration of bringing a claim against KAK under the Massachusetts False Claims Act — 2000.
E. Developing and elaborating the role of the Disputes Review Board for the MWRA’s ongoing Metro West Tunnel Project based upon advice of special construction counsel for the Outfall Tunnel Project-1993.
The MWRA also included the following notes with its list of policies A through E:
Development and elaboration of each of these policies is ongoing; the year appearing after each is the year in which the MWRA began to develop the policy.
Each document that relates to policy A also relates to policies B and C; each document that relates to policy B also relates to policy C.
According to a May 10, 2001, MWRA “news release," the Boston Harbor Project was substantially completed when the Outfall Tunnel was commissioned in September 2000. The news release announced an MWRA symposium to “celebrate the completion of the Boston Harbor Project milestones ordered in 1985 by Judge A. David Mazzone and present many key players to share their perspectives on the project’s history and accomplishments. ”
According to the MWRA’s Quarterly Compliance and Progress Report[2] to Judge Mazzone, as of December 17, 2001, on November 30, 2001, the MWRA declared substantial completion for the last construction contract of the Boston Harbor Project. The MWRA wrote the Federal Court about the significance of this milestone, and declared the Boston Harbor Project a “success.”
According to the MWRA’s Rule 30(b)(6) deposition witness, Ralph Wallace, director of the division responsible for managing the design and construction of the Boston Harbor Project, the July 2000, decisions to deny KAK’s Excess Water Claim and to reject the DRB’s recommendation thereon were made on the merits, without any reliance on the foregoing policy positions.
On March 15, 2002, this Court received — unsolicited — a letter from the Chief of the Government Bureau of the Attorney General’s Office (the “Attorney General’s letter”).[3] This letter, upon which neither counsel for the parties has commented, is somewhat like an amicus brief, odd at the trial court level, and odder still in connection with a Rule 56 motion. Its content suggests an important public policy issue that, like so many things of this nature, ought better be addressed by the General Court, or at least the Supreme Judicial Court. But, it having arrived at this Court, it will not be ignored, although certainly not finally answered here.
Two paragraphs at pp. 3-4 of the Attorney General’s letter capture the essence of the concerns expressed:
The Attorney General has had the pertinent powers expressed in G.L.c. 12, Sec. 3 (“to appear for the Commonwealth and for state departments, officers and commissions in all suits and other civil proceedings in which the Commonwealth is a party or interested, or in which the official acts and doings of said departments, officers and commissions are called in question, in all courts of the Commonwealth . . .”], since 1896 . . . Exemption (d), by contrast, is of more recent vintage having been enacted in 1973. St. 1973, Sec. 1050. The Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one . . . Thus, this [C]ourt should presume that the Legislature was aware, when it enacted exemption (d), that G.L.c. 12, Sec. 3 authorizes the Attorney General to develop legal policy, and that records created by him and attorneys working at his direction of necessity will embody that legal policy. Moreover, by not defining “policy” in exemption (d) narrowly to exclude "legal policy,” the Legislature must also be presumed to have intended to incorporate the Attorney General’s formation of legal policy within the protections afforded by exemption (d). Logic would dictate that in-house or outside state agency counsel’s legal policy documents are also included.
Moreover, a contrary ruling would severely hamper — if not extinguish — the Commonwealth’s ability to litigate its cases. While the purpose of the public records law apparently is to foster openness in government, nothing in the language of the statute, its legislative history or policy evinces a legislative intent to advantage private litigants and disadvantage Commonwealth parties in litigation against the Commonwealth. To the contrary, exemption (d) and other exemptions (e.g., exemption (i) permitting non-disclosure of appraisals of real property while litigation is ongoing or still possible under applicable statutes of limitation or repose) signal exactly the opposite legislative intent. The public records law simply should not be read to destroy the integrity of the adversarial process in litigation.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. *103 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here the job of the Court is to properly interpret the statute in a circumstance in which there has already been some guidance from the Supreme Judicial Court, but no clearly definitive answer to the issues raised in the Attorney General’s letter. The Court could avoid the issue and simply address whether the "policies” posited by the MWRA are truly policies still in the making or have lost their exemption (d) shield because the matters in which they have been involved are over. The litigation in the main action is certainly far from over, and perhaps that fact alone would suffice as a basis to rule that the legal policy making is ongoing, and exemption (d) provides protection enough. The Court is not comfortable with this approach because it is not satisfied that policies said to be protected by exemption (d) remain extant in this case.
The Court then runs headlong into the issue about the applicability of the attorney-client privilege to matters otherwise made public by G.L.c. 66, Sec. 10. It has already started the dialogue in its own memorandum of December 10, 2001. There it expressed its conclusion that when Justice Greaney wrote for a unanimous court in General Electric Company v. DEP, 429 Mass. 798, 801 (1999), that “materials privileged as work product pursuant to Mass.R.Civ.R Rule 26(b)(3) . . . are not protected from disclosure under the public records statute unless those materials fall within the scope of an express statutory exemption,” this was a signal that the same approach would apply to the attorney-client privilege.
Further thinking on the subject, however, causes this Court to conclude that it should not be the place where a privilege as hallowed in Anglo-American law as the attorney-client privilege, see, e.g., In the Matter of a Grand Jury Investigation, 437 Mass. 340, 351 (2002), crashes on the rocks of a trial court judge’s misreading of the law.[4] Any extension of the reach of the General Electric decision must come from the high court that wrote it or the creators of the statute that threatens the evisceration of the “very well established” privilege, Foster v. Hall, 12 Pick. 89, 93 (1832), for the Commonwealth, and for state departments, officers and commissions.
The log provided by the MWRA in this case suggests that the vast majority of the withheld documents have its counsel — in-house and outside — as their authors or their recipients, and their subjects are matters involving litigation of the main action. They seem precisely the kinds of documents all counsel would fight vigorously to protect from production under ordinary circumstances. Only the following documents appear to this Court to remain unprotected by the attorney-client privilege: MWRA Log, p. 2, #3; p. 7, ##8 and 10; p. 10, #9; and p. 14, ##4 and 5.

ORDER

For the foregoing reasons, the plaintiffs motion for summary judgment is DENIED, except for Log Documents p. 2, #3; p. 7, ##8 and 10; p. 10, #9; and p. 14, ##4 and 5.

REPORT OF THE CASE

This Court is of the opinion that the rulings made by it in this Memorandum so affect the merits of the controversy that the matter of statutory interpretation and reach ought to be determined by the Appeals Court or the Supreme Judicial Court before any further proceedings in the Superior Court. The issues are of exceptional novelty and seem to have that cosmic quality that makes this case one of those rare few that is an appropriate candidate for a report. See Transamerica Ins. Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 447-48 n. 2 (1992).
The clash between the venerable privilege between attorney and client and the dictates of the Public Records Law has significance far beyond the narrow confines of this case. The contentions in the Attorney General’s letter present significant public policy issues that deserve the careful consideration of an appellate court. The ruling which this Court has attempted to provide will surely be appealed by the losing side. Therefore, without guidance from any Massachusetts appellate court, the efforts of counsel in litigating hereafter the important issues raised under the Public Records Law could be enormously expensive and wasteful.
In short, this Court productively ought go no further. It has wrestled with the statutory interpretation and made its rulings for whatever benefit they may provide to a reviewing court. Such rulings, however, will not obviate an appeal therefrom in this case. Consequently, either before a full trial on the merits or after it, there will be an appeal of this Court’s rulings. And nothing in the trial that follows will cause those rulings to change.
The Court, therefore, pursuant to Mass.R.Civ.P. Rule 64, reports to the Appeals Court the following question:
Whether materials in the possession of an entity or person to which the Public Records Law, G.L.c. 66, Sec. 10, applies may be withheld from production solely on the basis that such materials fall within the protection of the attorney-client privilege, or are such materials not protected from disclosure under the Public Records Law unless those materials fall within the scope of an express statu toiy exemption?

These documents are filed with the United States District Court in Civil Action No. 85-0489-ADM.

The letter indicates that copies were sent “via telecopier and by mail” to Boston counsel for KAK and the MWRA.

Even in In the Matter of a Grand Jury Investigation, however, the law regarding the attorney-client privilege is not without some gray areas. For example, at 437 Mass. at 351, the court said: “A construction of the attorney-client privilege that would leave internal investigations wide open to third-party invasion would effectively penalize an institution for attempting to conform its operations to legal requirements by seeking the advice of knowledgeable and informed counsel.” Just a sentence later, however, the court pointed out that “unquestionably the attorney-client privilege may conflict with a different public policy where the Legislature has determined that an institution must disclose certain informa-' tion to others.” Does the Public Records Law present such a situation?